(No. 20537.—

THE CITY OF OGLESBY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JULIUS SKOWRONSKI *et al.* Defendants in Error.)

*Opinion filed February 18, 1931.*

C. B. CHAPMAN, and H. H. BAYNE, for plaintiff in error.

BUTTERS & BUTTERS, for defendants in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Industrial Commission made an award for partial dependency of $14 a week for 178 weeks and $8 for one week, amounting to $2500, against the city of Oglesby, in favor of Julius and Mary Skowronski, because of the death of their son Chester. The circuit court of LaSalle county confirmed the award, and a writ of error was allowed on the petition of the city.

It was stipulated on the hearing that on July 11, 1928, Chester and the city were subject to the provisions of the Compensation act; that Chester sustained accidental injuries on that day which arose out of and in the course of his employment and resulted in his death; that his earnings during the year next preceding the accident were $1456, the average weekly wage being $28, and that the only question to be determined was the extent of the dependency, if any. The plaintiff in error raises no question as to the right to an award of $1650, the minimum under the statute, but contends that there was no evidence upon which a larger award could be based.

Julius Skowronski lived with his family in a four-room house which he owned. His family consisted of his wife, Mary, and his sons—Mike, twenty-four years of age; Steve, twenty; Joseph, seventeen or eighteen; Edmund,

twelve; Barney, whose age is not shown, and Chester, out of whose death this claim arose. Julius testified through a Polish interpreter. He was fifty-three years of age when he testified before the arbitrator on November 21, 1928. He had been a coal miner. In September, 1925, about six tons· of coal fell on him, injuring his back and shoulders. He returned to work about a month later with his son Joseph, the two working together and earning from $150 to $180 a month until the mine closed, in April, 1926. Since then Joseph had had no work and Julius had been unable to work because of his injury. Steve's leg was broken March 5, 1927, and he had no employment for a year and a half after that. Mike had a steady job at the Lehigh cement mill, at which he earned from $45 to $50 every two weeks. He paid his mother eight dollars a week for lodging, board, washing and mending. His mother cashed his pay-check for him and paid him the balance after deducting the stated amount of eight dollars a week and such items as she had paid out for clothes or other things bought for Mike's use. Chester gave his entire earnings to his mother for the family use and his mother gave him five dollars every two weeks, and his clothes were also purchased out of his money. At the time of Chester's death his father had $94.19 on deposit in a bank. Chester's funeral expenses amounted to $516, of which amount $425 was the cost of the casket.

Both Julius and his wife, Mary, testified before the commission as to the family expenses, the wife also testifying through an interpreter. The family at the time of Chester's death consisted of eight persons. The father had been unable to work for two years because of his injury. Mike, the oldest son, and Chester were the only wage earners, and Mike's contribution to the family exchequer was eight dollars a week, which he paid for board, lodging, washing and mending. Chester gave his entire earnings, $28 a week, to his mother, and she gave him every two weeks five

dollars. This was the family income: $416 from Mike and fifty-two times $25.50 from Chester, $1326; total, $1742. Besides this the father had $94.19 in the bank at Chester's death. Joseph had had no work since June, 1927, and contributed nothing to the family expense. He had a rupture and had also an operation for appendicitis. Edmund and Barney were children who earned no wages.

It was incumbent on the applicants to show by a preponderance of the evidence that they were dependent on the earnings of the deceased, and the plaintiff in error contends that while the evidence shows that the earnings of the deceased were used in the family, neither the amount of property and income of the family nor the expense of the maintenance of the family was shown. As has been stated, it was shown that the family income was $1742. The exact cost of the maintenance of the family was not shown though both the applicants testified on the subject. The cross-examination of Julius showed that his testimony was in large part hearsay, derived from what his wife had told him. She was the one who received and spent the income. Her testimony was that she thought it cost about five dollars a week table expenses for each member of the family, except Mike, $30 a week, $1560, and the cost for coal, water, clothing, school books and all other necessary expenses for the family from June 11, 1927, to June 11, 1928, were $750. She was unable to state the cost of the various items of family expense. She testified to the total amount but stated that she did not remember the individual items. She did not keep any account of the individual amounts for clothing. She wrote the amount down but some of the items she did not have. When she bought them she had receipted bills and knew it cost her that much though she could not tell what it cost for any particular item; that $750 was what it cost for the year before Chester's death. She figured that it cost five dollars a week for each from the food she bought. She could not tell how

much she bought at the grocery, but adding it up it came to five dollars a week. She figured it up shortly before Chester's death because the money coming in was not enough to pay the expenses. This is not so satisfactory as an account specifying items in detail but it is the only kind of account she could give under the circumstances. She kept no account of her payments and had none except the receipted bills, which were not preserved. She computed the expense from the bills shortly before Chester's death because the money coming in was not sufficient to pay the expenses, but she did not preserve the account.

It is argued that Mrs. Skowronski's testimony demonstrates that she was not testifying from knowledge but from estimates made for the purpose, and that it furnishes no basis by which the amount contributed by the deceased can be compared with the total amount of income received and used. When it becomes material to show the amount of the expenses of a family where no account has been kept and receipted bills have not been preserved, evidence such as was produced on the hearing before the arbitrator and the commission is competent and its weight and credibility are to be determined by the triers of the issue. The income received did not exceed $1742, and it may be inferred fairly from Mrs. Skowronski's testimony that the expenses were not less than this amount, for she says that the reason of her calculation of the expenses in Chester's lifetime was that the money coming in was insufficient to pay the expenses.

It is further contended that there is no evidence tending to show the amount of the property and income of the applicants. It is shown that this family of eight persons lived in a house of four rooms in Oglesby which the father owned and which was not mortgaged, and that no money for the support of the family was received except Chester's wages and what Mike paid for his board. While the father, with the aid of his son Joseph, had been able to earn from

$150 to $180 a month after his injury in 1925, he had been unable to work on account of his injury after the mine closed, in April, 1926.

The finding of partial dependency is sustained by the evidence, and paragraph (c) of section 7 of the Workmen's Compensation act fixes the amount of the award at "such proportion of a sum equal to four times the average annual earnings of the employee as such dependency bears to total dependency, but not less in any event than one thousand six hundred fifty dollars and not more in any event than three thousand seven hundred fifty dollars." Chester's annual earnings of $1456 multiplied by four are $5824. As the evidence shows that Chester's contribution to the applicants' support was more than half of the total dependency, the award of $2500 is within the amount authorized by law.

The judgment confirming the award is affirmed.

*Judgment affirmed.*